Emil W. Herich, Esq.
LAW OFFICES OF EMIL W. HERICH, ESQ.
9720 Wilshire Boulevard, Suite 710
Beverly Hills, California 90012
Direct dial: (310) 777-3730
Fax: (310) 860-0363
E-mail: eherich@gmail.com

Attorneys for Debtor
*Joseph Charles Loomis*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| In re: | Case No. 2:10-bk-01885-RJH |
| Joseph Charles Loomis, | Chapter 11 |
| Debtor. | **COMPLAINT FOR DECLARATORY RELIEF/JUDGMENT** |
| Joseph Charles Loomis, | **2:10-ap-01796-RJH** |
| Plaintiff, | |
| v. | Assigned to the Honorable Randolph J. Haines |
| Intersections, Inc. and Net Enforcers, Inc., | |
| Defendants. | |

Debtor and Plaintiff Joseph C. Loomis ("Debtor" or "Plaintiff") avers as follows:

### **JURISDICTION AND VENUE**

1. Plaintiff is an individual residing in the State of Arizona and is a Debtor in the matter of *In re: Joseph Charles Loomis, Chapter 11, Case No. 2:10-bk-01885-RJH*. This Court has subject matter jurisdiction under 28 U.S.C. Section 157 (b) because this action qualifies as a core proceeding. This Court has personal jurisdiction over Defendants Intersections Inc. ("INTX") and Net Enforcers, Inc. ("NEI")(collectively

"Defendants") because Defendant NEI is a corporation organized and existing under the laws of the State of Arizona and both Defendants have previously sought affirmative relief in this Court in a separate action involving the same facts, transactions and occurrences. *Dow Chemical Co. v. Caldron*, 422 F.3d 827, 835 (9th Cir. 2005). Venue is proper in this court under 28 U.S.C. section 1409 because this adversary proceeding arises under and in connection with a case under Title 11 which is pending in this district and because the Plaintiff resides in this judicial district, Defendant NEI is doing business here and both Defendants have previously sought relief in this Court.

## GENERAL ALLEGATIONS

2. Debtor brings this action to obtain a judicial clarification that he is permitted to seek and accept employment in his chosen field of endeavor notwithstanding the existence of non-competition and non-compete provisions contained in two contracts entered into by Debtor arising out of his sale of NEI to INTX (discussed below) in November 2007. Debtor requires the relief requested to enhance his ability to devote 5 years of his future income so as to fund a plan of reorganization to be submitted to this Court. The relief requested is appropriately sought from this Court as the Defendants are two purported creditors of the Estate that have submitted the largest single proof of claim therein and will be the principal beneficiaries of a successful plan of reorganization (provided, however, that their claims are proven and demonstrated to the satisfaction of this Court).

## THE STOCK PURCHASE AGREEMENT

3. On or about November 9, 2007, Plaintiff and Defendants purportedly entered into a Stock Purchase Agreement ("SPA") wherein Plaintiff agreed to sell and Defendants agreed to purchase all of the stock of Defendant NEI for consideration stated in said agreement. Multiple drafts of the SPA were circulated prior to the closing. The closing was effected by the transfer between the parties of only the signature pages of the SPA. Substantial confusion exists as to which version of the SPA was signed.

4. Plaintiff is informed and believes and thereon alleges that Defendants contend that the SPA executed by Plaintiff contains a covenant not to compete. Specifically, Plaintiff is informed and believes and thereon alleges that Defendants contend paragraph 6.2 of the SPA is binding and enforceable against Plaintiff and states:

> (a) For a period commencing upon the Closing and ending on the later of (x) the third anniversary of the Closing and (y) the date the final payment of the Earnout is made, Seller shall not anywhere in the United States, directly or indirectly, without the prior written consent of Purchaser: (i) engage or participate, directly or indirectly, either as principal, agent, employee, employer, consultant, stockholder, director, officer, partner or in any other individual or representative capacity whatsoever, in the conduct or management of, or own any stock or other proprietary interest in, any business or enterprise that conducts business or operations which are the same as or substantially similar to the Business unless Seller or any such Affiliate shall have obtained the prior written consent thereto of Purchaser; provided, however, that Seller may purchase or otherwise acquire up to (but not more than) three percent (3%) of any class of the securities of any Person (but may not otherwise participate in the activities of such Person) if such securities are listed on any national or regional securities exchange or have been registered under Section 12(g) of the Securities Exchange Act of 1934, as amended, or (ii) solicit, hire or employ, or cause any other Person to solicit, hire or employ any employee or contractor then retained or employed by the Company or Purchaser or retained or employed by the Company or Purchaser within the one-year period immediately prior to such solicitation, hiring or employment.

A true and correct copy of the purported SPA is attached hereto as Exhibit "A".

5. Plaintiff is informed and believe that because he is potentially entitled to "earn out" payments for a period of up to five years from the closing of the sale of NEI to INTX in November 2007, that Defendants contend that he is currently bound by the non-competition provision set forth therein and will continue to be bound through November 2012.

## THE EMPLOYMENT AGREEMENT

6. On or about November 9, 2007, as part and parcel of the agreement by and between Plaintiff and Defendants wherein Plaintiff agreed to sell and Defendants agreed to buy NEI, the parties entered into an employment agreement. Plaintiff is informed and believes and thereon alleges that Defendants contend that the Employment Agreement executed by Plaintiff contains a non-competitor provision that states:

    (g) <u>Non-Competition</u>. In consideration for Executive's employment by Corporation and the compensation and other benefits Executive receives from Corporation, Executive agrees that during his employment with the Corporation and for a period of two (2) years thereafter he will not engage in any employment, business, or activity that is in any way competitive with the business or proposed business of the Corporation, and Executive will not assist any other person or organization in competing with the Corporation or in preparing to engage in competition with the business or proposed business of the Corporation.

A true and correct copy of the Employment Agreement that Plaintiff is informed and believes that Defendants contend was executed by the parties and which they contend is binding and enforceable against Plaintiff is attached hereto as Exhibit "B".

## **DEFENDANTS BREACH AND/OR FAILURE TO PERFORM UNDER THE SPA AND EMPLOYMENT AGREEMENT**

  7. Under the terms of the purported SPA, Plaintiff was entitled to additional consideration ("earn outs") for the sale of NEI if that company reached certain financial/earning targets. Under the terms of the purported Employment Agreement, Plaintiff agreed to continue on as Chief Executive Officer of NEI and Defendants agreed to pay Plaintiff a salary of $250,000 per year. Plaintiff was also entitled to certain stock options provided that he remained employed at NEI for a period of three years after the sale.

  8. Subsequent to the execution of the purported SPA and Employment Agreement, Defendants committed material breaches of both purported agreements. Specifically, Plaintiff alleges that Defendants breached the covenant of good faith and fair dealing implied in both agreements by deciding, on or about August 4, 2008, to terminate Plaintiff from NEI so that Defendants would not have to pay Plaintiff any additional consideration including the earn outs and stock options that would otherwise be due under the purported SPA and Employment Agreement. Defendants did in fact terminate Debtor from all positions of employment with NEI no later than November 19, 2008.

  9. Additionally, on or about May 27, 2009, Defendants filed an action in the United States District Court for the Eastern District of Virginia, entitled Intersections Inc. and Net Enforcers, Inc. v. Joseph C. Loomis and Jenni Loomis, U.S.D.C. Case No.

4

Case 2:10-ap-01796-RJH Doc 1 Filed 10/06/10 Entered 10/06/10 17:37:49 Desc
Main Document  Page 4 of 7

1:09CV597 ("the Virginia action"). In the complaint filed in the Virginia action, Defendants sought rescission of the SPA, or, in the alternative, compensatory damages.

10. Subsequently, on January 14, 2010, a mediation was held in the Virginia action. Defendants contend that a settlement was reached at the mediation. One of the provisions of the purported settlement is that the provisions of the Employment Agreement restricting Plaintiff's right to seek and obtain employment were rendered null and void. Defendants subsequently, on May 6, 2010, obtained relief from the stay of bankruptcy from this Court for the limited purpose of seeking a declaration as to the enforceability of the settlement. During such proceedings, Defendants clarified that it was their intention that the restrictions on employment set forth in the SPA were likewise to be negated by the settlement. Defendants have opposed Plaintiffs' motion to enforce the tentative settlement, however, the Magistrate Judge in the Virginia action has issued a report and recommendation that the Court enforce the settlement.

## **CLAIM FOR DECLARATORY RELIEF/JUDGMENT**

11. An actual controversy has arisen and now exists between the parties concerning their respective rights and duties arising from the purported SPA and Employment Agreement in that:

(a) Plaintiff contends that the restrictions on his employment set forth in the purported SPA and Employment Agreement are contrary to public policy and/or illegal and/or invalid and/or unenforceable and/or void; Plaintiff further and separately contends that on account of the material breaches of the purported SPA and Employment Agreement, he has been relieved of the restriction on employment set forth in the purported SPA and Employment Agreement to the extent they exist which is denied; Plaintiff further and separately contends that the restrictions on employment set forth in the Employment Agreement have expired of their own terms; Plaintiff further alleges that the restrictions on his employment set forth in the purported SPA and Employment Agreement may be rejected in Debtor's plan of

| | | |
|---|---|---|
| 1 | | reorganization and/or any existing or future claim for breach of such |
| 2 | | provision is dischargeable in this bankruptcy proceeding; and finally, |
| 3 | | Plaintiff further contends that if the purported settlement of the Virginia |
| 4 | | action is enforced, which Plaintiff opposes, then the restrictions on |
| 5 | | employment set forth in both the SPA and Employment Agreement are null |
| 6 | | and void on account of that settlement. |
| 7 | (b) | Plaintiff is informed and believes and thereon alleges that Defendants |
| 8 | | contend that the restrictions on his employment set forth in the purported |
| 9 | | SPA and Employment Agreement are valid and enforceable against him and |
| 10 | | will survive any proceedings related to this action and any enforcement of |
| 11 | | the purported settlement in the Virginia action. |

12. Plaintiff desires a judicial determination and declaration of the rights and duties under the purported SPA and Employment Agreement alleged above as to each matter in dispute between the parties.

13. A declaratory judgment is necessary and appropriate at this time under the circumstances in order that Plaintiff may ascertain his rights and duties under the purported SPA and Employment Agreements, if any. Moreover, declaratory relief is particularly appropriate to relieve Plaintiff (and any of his potential prospective employers) from the threat of litigation by Defendants that is preventing Plaintiff from obtaining gainful employment in his chosen field of endeavor.

**WHEREFORE, PLAINTIFF JOSEPH C. LOOMIS, PRAYS AS FOLLOWS:**

1. That the Court determine the respective rights and duties of Plaintiff and Defendants under the purported Stock Purchase Agreement and the Employment Agreement and that the Court declare that the Covenant Not to Compete in the former and the Non-Competition provision in the latter is invalid and/or unenforceable and/or void and/or terminated.

2. That Plaintiff be awarded his costs, expenses and attorney fees herein;

3. For such other relief as the Court may deem just, proper and equitable.

Dated: October 6, 2010

Respectfully submitted,

*[signature]*

Emil W. Herich
Email: eherich@kmwlaw.com
9720 Wilshire Boulevard, Suite 710
Beverly Hills, California 90212
Telephone: (310) 777-3730
Facsimile: (310) 860-0363
*Attorneys for Debtor In Possession*